# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA

v.                                 CRIMINAL ACTION NO. 2:14-cr-45

ARTHUR W. PRITT,
         **Defendant.**

## ORDER/OPINION GRANTING GOVERNMENT'S MOTION TO DETAIN

On December 22, 2014, came the United States by Shawn Morgan, its Assistant United States Attorney, and also came the defendant, Arthur W. Pritt, in person and by his counsel, Scott Shough, for hearing on the motion of the United States to detain Defendant pending trial. Thereupon, the matter came on to be heard upon the Government's motion to detain; upon the pretrial services report prepared and submitted to counsel and to the Court by Adult Pretrial Services; upon the testimony of United States Forest Service Special Agent Gene Smithson; upon the proffer given by Defendant's counsel; and upon the argument of counsel for Defendant and the Assistant United States Attorney.

### A. Contentions of the Parties

In the motion to detain, the Government contends this case is eligible for detention because it involves a 10+ year drug offense, a serious risk that Defendant will flee, and a serious risk of obstruction of justice. The Government also contends the Court should detain Defendant because there are no conditions of release which will reasonably assure his appearance as required and the safety of any other person and the community. The Government further asserts the rebuttable presumption as set forth in 18 U.S.C. § 3142(e)(3) because "there is probable cause to believe the defendant committed a 10+ year drug offense." (Docket No. 9 at 1.) The Government also states:

> We convicted Pritt in 2000 for trafficking into West Virginia. He plead to an ITAR and served 60 months. He was revoked in 2005 and sentenced to another 24 months, followed by 3 years SR. At some point, he moved to Florida and started trafficking marijuana from Florida to West Virginia. As you can read in the indictment, the grand jury found probable cause for a money judgment over $100,000, which is based on drug proceeds he made trafficking marijuana since his last release from prison. There are no guns involved in this case.

(Id. at 2.) At the hearing, the Government orally amended the motion to detain, proffering that the rebuttable presumption did not apply because the maximum statutory penalty applicable to both counts of the Indictment is five (5) years, not ten (10).

Defendant contends that he is not a flight risk or a danger to the community, and also contends there are conditions of release which could reasonably assure his appearance as required and the safety of any other person and the community. Defendant in particular proffered that he can reside with his wife and three (3) children at their new residence in Clarksburg, West Virginia.

### B. The Standards

18 U.S.C. § 3142(g) provides the specific factors that are to be considered to determine whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community. Those factors are:

(1) The nature and consequences of the offense;

(2) The weight of the evidence;

(3) The history and characteristics of the person; and

(4) The seriousness of the danger to any person or the community that would be posed by the person's release.

The United States Court of Appeals for the Fourth Circuit has interpreted these standards as they relate to the issue of danger to any person or the community that would be posed by the

persons's release in United States v. Williams, 753 F.2d 329 (4th Cir. 1985). In that case, both defendants had prior felony convictions for distribution of controlled substances and prior convictions of offenses involving dangerous drugs. At the time of arrest, one defendant had two weapons and large amounts of cash and was on parole for prior drug trafficking offenses. The other defendant had a large amount of cash and a beeper. Both defendants were at the top levels of a criminal organization and had been accused of ordering shootings. The Fourth Circuit has set a stringent standard for pretrial detention in accordance with legislative history of the statute as set forth in S.Rep.No. 98-225, 98th Cong., 2nd Sess., 3 (1983). That report indicated that detention would involve cases in which there were one or more of the following:

(1) A continuing pattern of criminal activity;

(2) Major drug felonies;

(3) Importing and distribution of controlled substances;

(4) Flight was a high risk in a major drug trafficking offense;

(5) Substantial ties to organizations outside the United States involved in the exportation of controlled substances; and

(6) Large financial resources and foreign contacts to escape.

### C. Discussion

Applying the legal standards herein set forth, and in addition to the reasons set forth on the record of the detention hearing, the Court finds clear and convincing evidence that:

1) During the fall of 2014, Defendant became the subject of an investigation into marijuana distribution in Randolph County and surrounding counties in West Virginia. At that time, Defendant was a resident of Archer, Florida.

2)  On October 24, 2014, Defendant was contacted by Special Agent Smithson and an IRS agent. At that time, Defendant was interviewed and provided an extensive statement. Special Agent Smithson seized 3.5 pounds of marijuana from Defendant's vehicle.

3)  During the interview, Defendant and the agents had some discussion as to Defendant's cooperation with authorities in both West Virginia and Florida. Defendant was released to return to Florida.

4)  Upon his return to Florida, Defendant met with DEA agents there. During that interview, he provided DEA agents with the names of some of his contacts in Florida, but not all of his contacts.

5)  During that interview, Defendant disclosed that he intended to return to West Virginia to collect a $50,000 drug debt that was owed to him. DEA agents in Florida advised against Defendant returning to West Virginia to do so.

6)  Subsequently, Defendant returned to West Virginia using a rental car. On November 13, 2014, he was stopped by the authorities in South Carolina while on his way back to Florida. South Carolina authorities seized $41,000 as well as a cell phone that Defendant had previously used to communicate with Special Agent Smithson. The cell phone was turned off.

7)  On November 7, 2014, agents conducted searches of residences belonging to several of Defendant's associates in West Virginia. Agents seized $9,000.00. This seizure occurred the day after Defendant was supposed to have made contact with Special Agent Smithson.

8)  Defendant was arrested in Florida on the federal warrant on November 19, 2014.

9) While incarcerated in a Florida jail, Defendant made several recorded calls to his wife. During those calls, he told her to "get the thing and take it to David in Tallahassee," that the authorities knew nothing about the "thing," and that the "thing" needed to be cleaned out. Defendant also told her to "take care of" a 1957 Chevrolet. He further discussed a car in West Virginia that authorities did not know about and that he had paid someone to perform work on. Finally, Defendant told his wife about two (2) large boxes that needed removed from the residence.

10) During these calls, Defendant also told his wife to make calls to people he knew.

11) On November 20, 2014, agents conducted a search of Defendant's residence in Florida. During that search, they seized marijuana and a quantity of human growth hormone.

Upon consideration of the pre-trial services report and the arguments of counsel, the Court finds under 18 U.S.C. §3142(g):

(1) The nature and consequences of the offense with which Defendant is charged are serious and involve controlled substances.

(2) The current charges coupled with Defendant's prior criminal history reveals a continuing pattern of drug related criminal activity.

(3) Until his arrest and transfer from Florida to West Virginia on the pending indictment, Defendant resided in Florida and only traveled to and from West Virginia to deliver controlled substances and collect money from those selling and distributing controlled substances for him in West Virginia.

(4) Defendant has a prior federal drug conviction in the Northern District of West Virginia; was sentenced on that conviction; served time; had supervised release revoked; and completed a federal sentence.

(5) Based upon the testimony and evidence presented, Defendant poses a serious risk of obstruction of justice and a danger to the community should he be released. The Court bases that finding on the fact that Defendant traveled to West Virginia to collect a $50,000 drug debt. While Defendant disclosed that activity to DEA agents in Florida, he did not disclose it to agents in West Virginia. Agents in West Virginia only learned about it from DEA agents in Florida. The Court finds that collection of a criminal drug debt of any amount, but particularly of that magnitude, poses a substantial danger to the public. The undersigned further notes that after Defendant agreed to cooperate with authorities, on November 20, 2014, he was found in possession of more marijuana and a quantity of human growth hormone. Furthermore, while incarcerated at a Florida jail, Defendant made recorded calls to his wife, essentially instructing her to hide assets and dispose of evidence. Finally, the Court notes that Defendant's alleged drug trafficking activity occurred interstate, as he conspired with individuals in both Florida and West Virginia for the purpose of distributing marijuana.

### D. Conclusion

The Court concludes Defendant presents a serious danger to the community and a serious risk of obstruction of justice (18 U.S.C. §3142(f)(2)(B) if released. The Court further concludes there is no condition or set of conditions which the Court could impose which would reasonably assure the safety of the community and prevent obstruction of justice if Defendant is released on bond.

Accordingly, the Government's motion to detain is **GRANTED**, and it is **ORDERED THAT:**

1. The defendant be, and he is hereby remanded to the custody of the United States Marshal pending further proceedings in this case;

2. The defendant be confined in a facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

3. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel; and

4. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which defendant is confined shall deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

5. The Clerk shall direct copies of this order to counsel for the United States, to counsel for the defendant, to the United States Marshal, and to the United States Probation Officer.

DATED this 22nd day of December, 2014.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE